IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**OMAR OSARIO**                                                                             **MOVANT**

**v.**                                                       **No. 1:04CR128-B**

**UNITED STATES OF AMERICA**                             **RESPONDENT**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* motion of Omar Osario to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion, and the matter is ripe for resolution. For the reasons set forth below, the instant motion shall be denied.

**Facts and Procedural History**

Omar Osario and Nicolas Gutierrez were jointly indicted August 26, 2004, on one count of conspiring to possess with intent to distribute in excess of 50 grams of methamphetamine and three counts of aiding and abetting each other in distributing methamphetamine. Osario was arrested August 31, 2004, and remained in custody under an INS detainer. On May 11, 2005, the court granted the government's motion to sever Osario's case and set his trial for June 27, 2005. On that day the government filed a plea agreement signed by Osario and his appointed counsel. The plea agreement included a provision in which Osario waived all rights to appeal and post-conviction collateral relief – including relief under 28 U.S.C. § 2255. On June 22, 2005, the court accepted Osario's plea to the conspiracy count of the indictment pursuant to the plea agreement. The presentence report, issued August 15, 2005, led to a determination of Osario's total offense level to be 23 and his criminal history category 1, indicating a guideline sentence

range of 46 to 57 months. There were no objections to the presentence report, and, on October 3, 2005, the court sentenced Osario to serve 57 months in the custody of the Federal Bureau of Prisons. Judgment was entered October 7, 2005. Osario did not appeal his conviction or sentence. On October 2, 2006, Osario filed pro se motion under 28 U.S.C. § 2255 to vacate set aside or correct sentence and a memorandum of law in support of his motion.

### Waiver of Appellate and Post-Conviction Collateral Relief

Osario alleges in his 2255 motion that counsel "failed to file [a] notice of appeal." He claims "he did no[t] receive sufficient enlightenment after talking with defense counsel at the sentencing date to fully comprehend his appellate rights." Osario claims that counsel "failed to consult with the defendant about an appeal," and "failed to file a notice of appeal . . . when it was requested." These claims are both contradictory and conclusory. More importantly, however, they are precluded by the waiver contained within Osario's plea agreement. Paragraph 9 of the plea agreement reads:

> **WAIVER OF ALL APPEALS AND COLLATERAL ATTACKS.**
>
> Defendant OMAR OSARIO hereby expressly waives his rights to appeal the conviction and/or sentence imposed in this case, and the manner in which sentence was imposed, on any ground whatsoever, including but not limited to the grounds set forth in 18 U.S.C. § 3742 and the Supreme Court decision in Blakely v. Washington, 124 S. Ct. 2531, 2004 WL 1402697. Defendant also hereby expressly waives all rights to contest or collaterally attack the conviction and sentence, and the manner in which sentence was imposed, in any post-conviction proceeding, including but not limited to a motion brought pursuant to 28 U.S.C. § 2255, and including all claims under Blakely, supra. That the defendant agrees to immediately withdraw his motion for judgment of acquittal and hereby waives all claims and complaints arising therefrom and related thereto. Defendant OMAR OSARIO waives these rights in exchange for the concessions and agreements made by the United states in this plea agreement.

"[W]hen the record of the Rule 11 hearing clearly indicates that a defendant has read and

understands his plea agreement and that he raised no question regarding a waiver of appeal provision, the defendant will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal." *United States v. Portello*, 185 F.3d 290, 293 (5th Cir. 1994), *cert. denied*, 513 U.S. 893 (1994). "In his plea agreement [Osario] waived all rights to appeal his sentence and waived any post-conviction relief available under 28 U.S.C. 2255 . . . . [Osario's] attorney cannot be considered deficient for failing to raise claims knowingly and voluntarily waived in the process of plea bargaining." *United States v. Wilkes*, 20 F.2d 651, 653 (5th Cir. 1994). For these reasons, Osario cannot seek relief under 28 U.S.C. § 2255, as he knowingly and voluntarily waived his right to do so. *United States v. Cervantes*, 132 F.3d 1106, 1109 n.2 (5th Cir. 1998). "[A]n informed and voluntary waiver of the right to file a 28 U.S.C. § 2255 motion will be enforced." *United States v. White*, 307 F.3d 336, 341 (5th Cir. 2002), citing *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).

### Osario's Guilty Plea Was Knowingly and Voluntarily Given

Given the nature of the waiver discussed above, Osario may only challenge his sentence if his guilty plea based upon the agreement containing the waiver is found to be invalid. The record clearly establishes, however, that Osario's plea was knowingly and voluntarily given – and is therefore valid. Paragraph 1 of the plea agreement stated:

> The defendant agrees to plead guilty under oath to Count One of the Indictment which charges conspiracy to possess with intent to distribute in excess of 50 grams of a mixture and substance containing a detectable amount of methamphetamine, and which carries penalties of not less than 5 years nor more than 40 years imprisonment.

Paragraph 5 of the plea agreement stipulated that:

> [t]he United States Attorney and Omar Osario, defendant, agree that the total drug weight to be used for the purpose of sentence calculation is 301.6 grams of a mixture and substance containing a detectable amount of methamphetamine. Otherwise, there is no agreement as to the sentence to be imposed, which will be in the sole discretion of the court subject to the Federal Sentencing Guidelines, which have been explained to the defendant by his attorney.

At the change of plea hearing, Osario, who represented that he spoke "very little" English, was questioned by the court, with the aid of an interpreter, as to his knowledge and understanding of the charges and the voluntariness and consequences of his guilty plea. Osario affirmed under oath that he had ample opportunity to discuss his case with counsel, including any possible defenses, was satisfied with his representation, and believed counsel had represented his best interest. He stated that he agreed he understood he was entitled to a jury trial – and that he understood that by pleading guilty there would be no trial and the court would find him guilty on the basis of his guilty plea. He also understood that he was waiving the right not to incriminate himself and would have answer the court's questions about what he did, and acknowledge his guilt. (Plea Tr. 6-10.)

The court advised Osario of the charge under count one and elements of the offense, which he affirmed he understood – and had no questions. The court asked Osario if he knew the maximum penalty for the charge. He replied, "Forty years." The court then asked him if he knew the minimum sentence he could receive. Osario answered, "Five." The court confirmed Osario was correct. (Plea Tr. 11-14.)

At the court's direction, the prosecutor read into the record the plea agreement, including the agreement between Osario and the Government that "the total drug weight to be used for the purpose of sentencing calculation is 301.6 grams of methamphetamine." The court inquired of

Osario, "Do you agree that the plea agreement you entered into with the Government was accurately stated by the prosecutor at this time?" Osario affirmed it was. The court asked Osario, "Has anyone made any promise to you other than this plea agreement to induce you to plead guilty?" Osario answered, "No." The court asked if he understood that the court was not required to accept the plea agreement and could sentence him up to the maximum allowed by statutory law. Osario said that he understood. The court then asked, "Has anyone made any prediction or prophecy of what sentence you would receive?" Osario answered, "No." The court, however, observed that "[Osario] seemed to be somewhat hesitant to say no on that." Defense counsel then interposed, "Your Honor, if I might interject, Mr. Osario and I discussed the guidelines as simply that, to be used by the court and he might be a little confused about that. He does understand those are simply there for purposes of the court to consider: is that correct?" Osario responded, "Correct." (Plea Tr. 15-19).

      The court asked Osario if he did, as charged in Count One, "Agree with another person to possession of methamphetamine with intent to deliver it to other people?" Osario replied, "Yes, sir." The court then directed the prosecutor to summarize the evidence against Osario. In doing so, the prosecutor recounted three transactions arranged by recorded phone calls to Osario during the period of the conspiracy. In the first transaction Osario and his codefendant, Gutierrez, delivered 18.4 grams of methamphetamine to confidential source and an undercover Mississippi Bureau of Narcotics Agent. The transaction was video and audio recorded. On the second occasion Gutierrez alone delivered 54.8 grams of methamphetamine to the confidential source and the undercover agent. In the third transaction, arranged with Osario by phone, Gutierrez alone delivered 228.4 grams of methamphetamine to the undercover agent. After the purchase,

Osario called the undercover agent and asked if Gutierrez had left yet. The three deliveries amounted to 301.6 grams of methamphetamine. (Plea Tr. 19-22).

Following the Prosecutor's statement of the evidence, the court asked Osario: "Did you do what the prosecutor said you did?" Osario answered, "Yes, sir." When the court asked him how long he had been "carrying on this operation," Osario responded, "I didn't really do all of that.
It was somebody else. I just made the calls." The court asked him, "Did you go and pass this methamphetamine to the undercover agent?" And Osario said, "No." The prosecutor interjected that "[o]n the first transaction on the factual basis, he does hand the methamphetamine on video to the undercover agent and to the CS." The court then asked Osario, "Well, is that correct?" Osario responded, "Yes." The court asked the prosecutor, "Was he present at the other passings?" The prosecutor answered, "No, your Honor. He brokered those calls placed to his cell phone. After the calls were placed to him and the orders were made, then he had another person deliver the methamphetamine for him." The court asked Osario, "Is that correct?" And he said, "Yes, sir." The court found the factual basis sufficient and asked Osario, "Do you plead guilty or not guilty to Count 1?" Osario answered, "Guilty." The court found the plea to be informed and voluntary, and accepted it. (Plea Tr. 22-24).

Osario's argument that he did not understand the plea agreement because English is not his native tongue is unavailing based upon the clear evidence in the record. He alleges, "The defense did not read and explain the plea agreement." The plea agreement begins by stating that" "Defendant has read and fully understands this plea agreement and approves same." It ends by stating, "AGREED AND CONSENTED TO," above Osario's signature, followed by

counsel's signature approving the agreement. The substantive provisions of the plea agreement were read into the record by the prosecutor at the plea hearing – where the court asked, "Mr. Osario, do you agree that the plea agreement you entered into with the government was accurately stated by the prosecutor at this time?" Osario answered, "Yes."

A defendant's later testimony that he did not read the plea is irrelevant when the colloquy demonstrates that he understood the plea. *United States v. Cotheran*, 302 F.3d 279, 284 (5th Cir. 2002). The plea agreement was read into the record, and Osario agreed that it was accurate. The court then asked him, "Do you understand what is happening here today?" Osario stated that he did, and counsel confirmed that Osario "has had this thoroughly explained" and was confident "he does understand the process." Counsel stated that when the plea agreement was negotiated, Osario's bilingual wife and an interpreter were present and it was "thoroughly explained." Osario himself affirmed that he had "had ample opportunity to discuss this case with [his] attorney," and was "satisfied with Mr. Keenum's representation." (Plea Tr. 5-7).

The plea agreement in this case clearly negated the existence of any guarantees about lenient sentencing – and indicated that sentencing would be determined by the court. The agreement expressly negated the existence of any other agreements outside the written document. Further, Osario stated in the agreement that he had read, understood, and approved the agreement – and stated during the plea colloquy that he had ample opportunity to discuss the case with counsel and was satisfied with his counsel's representation. His post-conviction allegations are merely conclusory and negated by the clear declarations in the plea agreement and plea colloquy.

For these reasons, Osario's waiver of all appellate and post-conviction collateral relief rights is valid and enforceable, as his plea of guilty was knowingly and voluntarily given.

Therefore, Osario's present motion for relief under 28 U.S.C. § 2255 is hereby **DISMISSED** with prejudice. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 15th day of April, 2009.

/s/ Neal Biggers

NEAL B. BIGGERS
SENIOR U. S. DISTRICT JUDGE